James S. Rigberg (SBN 015267)
jrigberg@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
Firm Email: courtdocs@dickinsonwright.com

*Attorneys for Plaintiff Jo-Ann Stores, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Jo-Ann Stores, LLC., an Ohio Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>SD-Sahuarita Properties, LLC, an Arizona Limited Liability Company,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Declaratory Relief; Breach of Contract)** |

Plaintiff Jo-Ann Stores, LLC ("Jo-Ann") for its complaint against defendant SD-Sahuarita Properties, LLC ("Sahuarita") alleges as follows:

## I.
## THE PARTIES

1. Jo-Ann is an Ohio LLC with its principal place of business located in Hudson, Ohio. Jo-Ann operates fabric and craft stores with locations across the United States, including several stores in Arizona.

2. Sahuarita is an Arizona limited liability company with its principal place of business located in Arizona. Sahuarita is the current owner of real property located at 18705-18805 South I-19 Frontage Road, Sahuarita, Arizona (the "Shopping Center").

## II.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the litigants are citizens of different states and the amount in controversy exceeds the sum of $75,000.

2. This Court has subject matter jurisdiction over this claim for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Fed. R. Civ. P., as this is a case of actual controversy within the Court's jurisdiction.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Sahuarita's registered address is within this District.

## III.

## FACTUAL COMMON TO ALL CLAIMS

4. Pursuant to a Lease made as of December 10, 2012 ("Original Lease"), Jo-Ann, as Tenant, leased retail space consisting of approximately 13,043 square feet of Gross Leasable Area from Sun Life Assurance Company of Canada (U.S.), as original landlord, at the Shopping Center.

5. Pursuant to that certain Assignment and Assumption of Leases and Security Deposits dated July 7, 2017, Sun Life Assurance assigned its rights as Landlord under the Lease to Sahuarita.

6. Pursuant to a First Amendment to Lease Agreement made as of May 4, 2020 (the "First Amendment"), Jo-Ann and Sahuarita agreed to amend the Original Lease, including to extend the term of the Lease through January 31, 2025. Hereafter, the Original Lease and First Amendment are referred to collectively as the "Lease").

7. The Lease, Section 5, requires Jo-Ann to pay Fixed Minimum Rent in monthly installments, in advance on or before the first day of each month during the term of the Lease in the amounts specified in the Lease.

8. The Lease, Section 14, titled "Use Violation," grants certain exclusivity rights to Jo-Ann, providing that, if any portion of the Shopping Center is used or occupied

for the "Protected Use," or if any sale area within the Shopping Center is designated for the Protected Use, a "Use Violation" would occur.

9. In the event a Use Violation occurs, Jo-Ann, among other remedies would be obligated only "to pay Substitute Rent in lieu of Fixed Minimum Rent until such Use Violation ceases."

10. The Lease, Section 2(s), defines a "Protected Use" as follows:

> [T]he sale of fabrics of all kinds, goods sold by the yard, upholstery materials, scrapbooks and scrapbooking supplies and materials, patterns, yarns and knitting supplies, needlepoint, macramé, artificial flowers and accessories, arts and crafts materials and supplies, all types of notions, custom framing, framed artwork, sewing machines, sewing machine furniture, products, accessories and services directly related to all of the foregoing, and other items and services customarily offered for sale by a fabric and/or arts and crafts store.

11. The Lease, Section 2(aa), defines "Substitute Rent" as "50% of the then-current Fixed Minimum Rent."

12. The Lease, Section 14(g) requires Sahuarita to use "diligent, good faith, commercially reasonable efforts to cure any breach of violation" of Section 14, "including, without limitation, seeking and diligently prosecuting all available legal and equitable remedies to compel or otherwise cause cessation of the Use Violation."

13. The Lease, Section 50, provides that "[a]ll actions or claims by Tenant for recovery of excess payments of Rent shall be barred three years after the end of each Lease Year or Partial Lease Year."

14. In the spring of 2023, Jo-Ann's corporate office performed an audit of the store at the Shopping Center and learned that, in 2018, Sahuarita began leasing space within the Shopping Center to Cathey's Sewing and Vacuum ("Cathey's").

15. Jo-Ann learned that Cathey's primary business included the sale of sewing machines and related products and accessories.

16. The sale of sewing machines and related products and accessories is a Protected Use pursuant to the Lease, Section 1(s); accordingly, Cathey's sale of these items constitutes a Use Violation.

3

17. By letter dated March 29, 2023 (the "March 29 Letter"), Jo-Ann demanded that Sahuarita cure the Use Provision within 30 days and that, if the Use Violation were not cured, Jo-Ann could exercise its rights under the Lease.

18. By letter dated May 18, 2023, Sahuartia admitted that Cathey's business overlapped the long list of "[P]rotected [U]ses" in the Lease, effectively agreeing that a Use Violation had occurred and was ongoing.

19. Nevertheless, Sahuarita failed and refused to cure the Use Violation.

20. Despite its failure and refusal to cure the Use Violation, which remains ongoing, Sahuarita contends that Jo-Ann is not entitled to pay Substitute Rent.

21. When Jo-Ann attempted to pay Substitute Rent, Sahuarita took legal action to exercise its remedies upon default under the Lease, including an attempt to oust Jo-Ann from the Premises.

22. Accordingly, Jo-Ann has paid Fixed Minimum Rent, as opposed to Substitute Rent, pending the determination of the parties' rights under the Lease in this action.

## IV.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment

23. The foregoing allegations are incorporated herein by reference as if fully set forth herein.

24. An actual and justiciable controversy exists between Jo-Ann and Sahuarita concerning Jo-Ann's right to pay Substitute Rent based on the ongoing Use Violation.

25. As a matter of law, based on the clear terms of the Lease, based on the Use Violation, Jo-Ann has been entitled to pay Substitute Rent since the Use Violation began and is entitled to continue paying Substitute Rent until the Use Violation is cured.

4

26. Pursuant to U.S.C. § 2201, Jo-Ann is entitled right to have this Court declare its rights and other legal relations under the Lease and that it is entitled to pay Substitute Rent unless and until the Use Violation is cured.

27. Jo-Ann is entitled to recover its reasonable attorneys' fees and costs pursuant to the Lease, Section 58.

V.

**SECOND CLAIM FOR RELIEF**

**Breach of Lease**

28. The foregoing allegations are incorporated by reference as if fully set forth herein.

29. Jo-Ann has satisfied all conditions precedent to enforcing its rights under the Lease.

30. Cathey's business constitutes a Use Violation under the Lease.

31. Pursuant to the express terms of the Lease, Jo-Ann became entitled to pay Substitute Rent when the Use Violation began in 2018.

32. Because Jo-Ann did not learn of the Use Violation until 2023, it continued to pay the full amount of Fixed Minimum Rent payable under the Lease from 2018.

33. Pending the Court's determination of its rights in this action, Jo-Ann has continued to pay the Fixed Minimum Rent payable under the Lease.

34. Sahuarita has failed and refused to cure the Use Violation; instead, Sahuarita has taken action to prevent Jo-Ann from paying Substitute Rent.

35. Sahuarita's breach of the Lease has proximately caused Jo-Ann monetary and other damages, equal to the difference between the Fixed Minimum Rent Jo-Ann has paid since February 1, 2020 and the Substitute Rent that Jo-Ann should have paid, through December 2023, in the amount of $222,539.36.

36. In addition, Sahuartia's breach of the Lease will continue to cause damage to Jo-Ann in the amount of the difference between the Fixed Minimum Rent Jo-Ann will

continue to pay and the Substitute Rent Jo-Ann should pay from January 2024 and the date that Judgment is entered in this action, in an amount to be proven at trial.

37. Jo-Ann is entitled to recover its reasonable attorneys' fees and costs pursuant to the Lease, Section 58.

**WHEREFORE** Plaintiff requests that the Court grant the following relief:

A. A judgment declaring that Jo-Ann is and has been since 2018, entitled to pay Substitute Rent under the Lease, shall be entitled to continue paying Substitute Rent unless and until the Use Violation is cured.

B. Compensatory damages for Sahuarita's breach of the Lease equal to the difference between the Fixed Minimum Rent Jo-Ann's has paid and the Substitute Rent Jo-Ann's was and has been entitled to pay since February 1, 2020, through the date Judgment is entered, in an amount to be proven at trial, but in no event less than $222,539.36.

C. An award of Jo-Ann's reasonable attorneys' fees and costs incurred in prosecuting this action; and

D. Such other relief that the Court deems appropriate.

**DATED** this 13th day of December, 2023.

          **DICKINSON WRIGHT PLLC**

          By: *s/ James S. Rigberg*
            James S. Rigberg
            1850 North Central Avenue, Suite 1400
            Phoenix, Arizona 85004
            *Attorneys for Plaintiff*